UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUIS FERNANDO CABEZA and MIGUEL CABEZA,

    Plaintiffs,

v.                                                         Case No:   6:13-cv-1938-Orl-40TBS

THE CITY OF ORLANDO and
FREDERICK DANTES,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss Luis Fernando Cabeza's Claims Due to His Refusal to Participate in Discovery, or in the Alternative, to Compel the Deposition of Luis Fernando Cabeza, or to Stay the Case (Doc. 30). Upon due consideration I respectfully recommend that the motion be **granted in part** and **denied in part**.

### Background

Plaintiff Luis Fernando Cabeza, his family and friends arrived at a local Orlando bar around midnight on December 30, 2011 (Doc. 2, ¶¶ 18-19). After about an hour and a half, Luis and a friend left the bar (Id., ¶ 20). Upon their return, they were denied admission at which point, they left again (Id., ¶ 21). Luis returned to the bar alone and asked if he could be admitted to gather his family so that they might leave (Id., ¶ 22). He was refused entry and the person at the door summoned an off-duty Orlando police officer who working security at the establishment (Id., ¶ 23). The police officer told Luis to leave and he complied (Id.). Luis returned to the bar again and this time, he was

admitted (Id., ¶ 24).   Then, Luis' friend attempted to re-enter the bar, and Luis tried to help him (Id., ¶ 25).   The police officer was present when Luis went to the door to assist his friend (Id., ¶ 26).   What happened next is in dispute but it ended with Luis being placed under arrest for battery on a law enforcement officer, resisting arrest with violence, and trespass after warning (Id., ¶ 33).   The police also arrested his brother, Plaintiff Miguel Cabeza for battery on a law enforcement officer and resisting arrest with violence (Id., ¶ 34).   Luis and Miguel both allege that the police used excessive and unreasonable force and gave them unwarranted physical beatings (Id., ¶¶ 27-29).

Plaintiffs filed this lawsuit in state court on November 22, 2013, alleging battery and violations of 42 U.S.C. § 1983 (Id.).   Defendants removed the case to this Court on December 18, 2013 (Doc. 1).   Criminal charges were filed against Luis and remain pending in state court.   Defendants seek dismissal of this case on the ground that Luis is refusing to participate in discovery (Doc. 30).   Specifically, at this deposition, Luis invoked his Fifth Amendment privilege against self-incrimination in response to 30 questions asked by Defendants' counsel (Doc. 30 at 6).   In the alternative, Defendants ask the Court to compel Luis to answer their questions, or stay this case pending the resolution of the criminal charges (Id.).[1]

## Discussion

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible."   Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985).

---

[1] The Court may rightly wonder why, if Luis was arrested in 2011, his state criminal case is still unresolved.   I have reviewed the criminal docket in Luis' case and find that the state was not ready when the case came on for trial in March, 2012.   In June, August, and October 2012, Luis requested and was granted continuances.   In January, 2013, he told the state court he was still not prepared to go to trial and the case was continued again.   In March, 2013, Luis was accepted into a pretrial diversion program but in April, he was rejected and the case went back on the court's calendar.   In August, 2014, Luis received another referral to diversion and in October, he was rejected again.   Then, in January of this year, he was approved for pretrial diversion for the third time (Doc. 31-1).

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "The fifth amendment privilege against self-incrimination 'protects a person … against being incriminated by his own compelled testimonial communications.'" United States v. Argomaniz, 925 F.2d 1349, 1352 (11th Cir. 1991) (quoting Fisher v. United States, 425 U.S. 391, 409 (1976)). The privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.'" Id. at 1352-53; Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1086 (5th Cir. 1979)[2] ("The fact that the privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection."). It only applies where the individual has a legitimate risk of criminal liability. Argomaniz, 925 F.2d at 1353; see also Wehling, 608 F.2d at 1086 (The Fifth Amendment is a "shield to any party who fear[s] that complying with discovery would expose him to a risk of self-incrimination.").

As a general rule, the party asserting the privilege may not use it as both a shield and a sword. Wehling, 608 F.2d at 1087. The court must consider the competing constitutional and procedural rights of all parties to the action, and to dismiss a case in response to a Plaintiff's valid assertion of the privilege, in the presence of "other, less burdensome, remedies" would violate the Constitution. Id. at 1088-89.[3] In any event, the court bears the responsibility to "make a proper inquiry into the legitimacy and scope of the witness' assertion of his Fifth Amendment privilege. A blanket assertion of the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[3] The Circuit Court in Wehling reversed the lower court's dismissal of the action and remanded the case for the court to enter a protective order staying the case because it "seem[ed] preferable at this point to requiring plaintiff to choose between his silence and his lawsuit." Wehling, 608 F.2d at 1089.

privilege without inquiry by the court is unacceptable." United States v. Goodwin, 625 F.2d 693, 701 (5th Cir. 1980); Argomaniz, 925 F.2d at 1356. To that end, the "court must review the assertions of privilege on a question-by-question basis." Argomaniz, 925 F.2d at 1355. Now, the Court considers Luis' claims of privilege as follows:

| Assertion of Privilege | Location - Doc. 30-1 | Recommended Ruling |
|---|---|---|
| Q. Did you have any trouble understanding any instructions from Officer Dantes on December 23, 2011?<br><br>A. I'm going to use, assert my Fifth.<br><br>THE INTERPRETER: I'd like to exercise my Fifth Amendment, right | Page 9, lines 18-22 | Sustained |
| Q. It's my understanding that you left the club at some point and tried to return, is that correct?<br><br>[A]. I'm invoking my Fifth Amendment privilege. | Page 22, lines 24-25<br><br>Page 23, lines 1-2 | Sustained |
| Q. I need to ask a series of questions here. Did you try to reenter the Blue Martini after being told you were trespassed?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 23, lines 6-9 | Sustained |
| Q. Did Officer Dantes tell you that you had been trespassed from the Blue Martini lounge and that you were to leave the premises?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 23, lines 10-13 | Sustained |
| Q. Did you remain on the Blue Martini premises after being told that you had been trespassed by the Blue Martini bouncer?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 23, lines, 14-17 | Sustained |

| | | |
|---|---|---|
| Q. Did you remain on the premises of the Blue Martini lounge after being told that you had been trespassed by Officer Dantes?<br><br>A. I am invoking my Fifth Amendment privilege. | Page, 23, lines 18-21 | Sustained |
| Q. What was the substance of the conversations that you had with officer at that [sic] Dantes on December 29, 2011?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 23, lines 22-25 | Sustained |
| Q. Did you kick Officer Dantes' baton on December 29, 2011?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 24, lines 4-6 | Sustained |
| Q. Did you see your brother try to wrestle the taser out of Officer Dantes' hand on December 29, 2011?<br><br>[Counsel]: Object to form,<br><br>A.  I am invoking my Fifth Amendment privilege. | Page 24, lines 7-11 | Sustained |
| Q. Do you recall standing up after Officer Dantes tried to get you in handcuffs?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 25, lines 3-5 | Sustained |
| Q. Do you recall Officer Dantes telling you to get on the ground and you remain standing?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 25, lines 6-8 | Sustained |
| Q. Do you recall Officer Dantes striking you with the baton and you continued to stand up?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 25, lines 9-11 | Sustained |
| Q. Did you ever submit to Officer Dantes and put your hands behind your back so that you could be handcuffed? | Page 25, lines 12-15 | Sustained |

| | | |
|---|---|---|
| A. I am invoking my Fifth Amendment privilege. | | |
| Q. Did you ever comply with any commands that were given to you by Officer Dantes?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 25, lines 16-18 | Sustained |
| Q. How many times were you told by Blue Martini staff that you were not allowed to reenter the club?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 25, lines 19-21 | Sustained |
| Q. Do you know if Miguel was trespassed from the Blue Martini?<br><br>[Counsel]: Object to form.<br><br>A.  I am invoking my Fifth Amendment privilege. | Page 25, lines 22-25<br><br>Page 26, line 1 | Sustained |
| Q. Did Miguel ever tell you that he tried to grab the taser from Officer Dante's hand?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 26, lines 3-5 | Sustained |
| Q. Did you hear any commands Officer Dantes gave to your brother Miguel?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 26, lines 6-8 | Overruled |
| Q. Did you physically resist Officer Dantes' efforts to put handcuffs on you on December 29, 2011?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 26, lines 21-23 | Sustained |
| Q. How many officers did it take to finally get you in handcuffs?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 26, lines 24-5<br><br>Page 27, line 1 | Sustained |
| Q. Anything else that you were required to do?<br><br>A. And write a letter of apology to the police. | Page 29-, lines 2-5 | Sustained |

| | | |
|---|---|---|
| Q. Have you done that yet?<br><br>A. I am invoking my Fifth Amendment privilege. | | |
| Q. Have you watched any of the surveillance videos depicting the incident?<br><br>A. Yes, all.<br><br>Q. And do they accurately depict what occurred on that evening?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 35, lines 19-24 | Sustained |
| Q. Do you have any reason to dispute the authenticity of the videos which you've seen?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 35, line 25<br><br>Page 36, lines 1-2 | Sustained |
| Q. Did you report any injuries to the nurse [at the Orange County Jail on December 30, 2011]?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 45, lines 15-16 | Sustained |
| Q. Did you report any injuries to the nurse you saw at the holding facility in Miami?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 47, lines 2-4 | Sustained |
| Q. Do you know why you were trespassed from the Blue Martini on December 29, 2011?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 48, lines 13-15 | Sustained |
| Q. Was anybody else from your family trespassed on December 29, 2011?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 48, lines 16-18 | Sustained |
| Q. Is that the [police] report you contend is full of lies?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 49, lines 8-10 | Sustained |

| | | |
|---|---|---|
| Q. Well, you said that it was full of lies. I want you to tell me what in the report specifically is untrue.<br><br>A. I am invoking my Fifth Amendment privilege. | Page 49, lines 11-14 | Sustained |
| Q. Did [your brother] ever ask you or did you ever tell him why you were trying to get back inside the Blue Martini?<br><br>A. I am invoking my Fifth Amendment privilege. | Page 50 at 19-21 | Sustained |

Based on the foregoing, I respectfully recommend that the district court find that Luis' assertion of his Fifth Amendment privilege was not improper. In that regard, I also respectfully recommend that the district court deny Defendants' alternative motion to compel responses to these questions.

Defendants also ask this Court to dismiss the action due to Luis' alleged recalcitrance or, in the alternative, stay the action until the underlying criminal action has been resolved. (Doc. 30 at 6-7). Luis agrees that "[t]he imposition of a stay in this matter protects all litigants." (Doc. 31 at 9).

The fact that the criminal case remains pending against Luis is not in dispute. Therefore, I respectfully recommend that the district court stay the case until the underlying criminal case is resolved so that Luis' testimony will no longer carry the risk of self-incrimination. See Wehling, 608 F.2d at 1088-89; In re Grand Jury Proceedings, 995 F.2d 1013, 1018 n. 11 (11th Cir. 1993). I also recommend that the Court require Luis to file a status report every 90 days, to keep the Court informed of the status of his criminal case.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. Defendants' Motion to Dismiss Luis Fernando Cabeza's Claims Due to His Refusal to Participate in Discovery, or in the Alternative, to Compel the Deposition of Luis Fernando Cabeza, or to Stay the Case (Doc. 30) be **DENIED** to the extent it seeks dismissal of this case.

2. That the motion be **DENIED** to the extent it seeks to compel the deposition of Plaintiff Luis Fernando Cabeza at this time.

3. That the motion be **GRANTED** to the extent it seeks to stay this case pending the resolution of the underlying criminal case.

4. That Plaintiff Luis Fernando Cabeza be required to file a status report every 90 days, detailing the status of his criminal case.

5. That the Court **DENY** Defendants' request for an award of legal expenses pursuant to Federal Rule of Civil Procedure 37(a)(5).

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 3, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record

- 9 -